**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES M. SINGER,

Plaintiff,

v.

BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF PSYCHOLOGY, *et al.*,

Defendants.

CIVIL ACTION NO. 3:CV-12-0527

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiff's Complaint (Doc. 8) filed by Defendants the Pennsylvania Board of Psychology (the "Board"), John Kelly, and Frank Monaco (collectively "Defendants"). In this 42 U.S.C. § 1983 action, Plaintiff James Singer claims that he has been deprived of various constitutional rights before and since his license to practice psychology was suspended in 1992. Essentially, Plaintiff alleges that the suspension of his license was the culmination of a conspiracy stemming from his report of suspected child abuse, and that the conspiracy is still ongoing. Defendants have moved to dismiss the Complaint on the basis that the claims are all barred by the statute of limitations. In opposition, Plaintiff contends that the claims are timely pursuant to the continuing violations doctrine. Because the untimeliness of Plaintiff's claims is apparent from the face of the Complaint, Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure will be granted.

## I. Background

The facts as alleged in the Complaint are as follows:[1]

---

[1] Plaintiff James Singer was, until 1992, a licensed psychologist on staff at Maple Avenue Hospital in Dubois, Pennsylvania. (*Compl.*, ¶ 9.) Defendants are the Pennsylvania Board of Psychology, John Kelly, who was staff counsel for the

In August 1986, Plaintiff, while working as a consulting physician at Maple Avenue Hospital, received a complaint from a patient that she was being sexually abused by her father. (*Compl.*, ¶¶ 15, 17.) These accusations were made by the patient in front of multiple witnesses. (*Id*. at ¶ 18.) Plaintiff subsequently contacted Children's Services in Clearfield County to report the suspected abuse. (*Id*. at ¶ 19.) Within twenty-four (24) hours, the patient was placed by Children's Services with her aunt. (*Id*. at ¶ 20.) Also that day, Plaintiff received a threatening phone call from the patient's father. (*Id*. at ¶ 21.) Approximately three (3) weeks later, the patient gave Plaintiff a series of diary entries which detailed the ongoing sexual abuse. (*Id*. at ¶ 22.)

Thereafter, on or about April 23, 1987, the patient contacted Plaintiff to inform him that her father "was going to get him." (*Id*. at ¶ 24.) The same day, Plaintiff received a referral to evaluate and provide treatment to Allen Muth. (*Id*. at ¶ 25.) Mr. Muth refused to take the medication prescribed by his treating physician. (*Id*. at ¶ 26.) Based on this and other factors, Plaintiff refused Mr. Muth treatment. (*Id*. at ¶ 27.) Later, Mr. Muth falsely alleged to the Board that Plaintiff claimed that Mr. Muth "was going to die." (*Id*. at ¶ 28.) Plaintiff then learned that Mr. Muth was a friend of the patient's father. (*Id*. at ¶ 29.)

Eventually, the patient's father solicited six additional individuals to file complaints against Plaintiff. (*Id*. at ¶ 30.) Yet, no criminal charges were ever filed. (*Id*.)

Plaintiff subsequently learned that Clearfield County Children's Services had failed to investigate the purported sexual abuse between the patient and her father. (*Id*. at ¶ 31.) As such, Plaintiff referred the matter to the Pennsylvania Department of Welfare and the Offices of the Attorney General and the Governor of Pennsylvania. (*Id*.)

---

Board at all relevant times, and Captain Frank Monaco, "who was the Commanding Officer of the Organized Crime Division of the Bureau of Criminal Investigation of the Pennsylvania State Police." (*Id*. at ¶¶ 10-12.)

Because he reported the matter to the Department of Welfare and the Governor and Attorney General's Offices, Plaintiff received a threatening telephone call from Tom Zook. (*Id*. at ¶ 32.) On January 11, 1988, two individuals claiming to be from "the psychological licensing board of Pennsylvania" delivered five poorly written complaints to Plaintiff at his home. (*Id*. at ¶ 33.) Then, on August 9, 1988, Plaintiff was served a Show Cause Order from the Board, containing fifty-eight (58) counts, as to why his license should not be revoked. (*Id*. at ¶ 35.)

A hearing was held on these charges in September 1990. (*Id*. at ¶ 36.) Defendant Kelly was staff counsel for the Board tasked with the responsibility of prosecuting the case against Plaintiff. (*Id*. at ¶ 97.) Before, during, and subsequent to the hearing, Defendant Kelly denied Plaintiff's discovery requests without reason, and he attempted to intimidate Plaintiff. (*Id*. at ¶ 98.)

Additionally, several witness perjured themselves at the September 1990 hearing according to a report by Lieutenant Ivan Hoover. (*Id*. at ¶ 37.) Lieutenant Hoover's report also claimed witnesses and investigators obstructed justice, engaged in official oppression, tampered with evidence, and provided unsworn falsifications to authorities. (*Id*. at ¶ 38.) Nevertheless, the Board never appointed an independent hearing officer nor assigned an Administrative Law Judge to Plaintiff's case. (*Id*. at ¶ 39.) Plaintiff was ultimately found guilty by the Board on six (6) of the fifty-eight (58) charges. (*Id*. at ¶ 41.)

Defendant Monaco was assigned to review an investigative report submitted by Lieutenant Hoover regarding the reported sexual abuse of the patient during this time. (*Id*. at ¶ 105.) But, Defendant Monaco never forwarded the report through proper channels for investigation. (*Id*. at ¶ 106.) And, Defendant Monaco insisted that the matter involving the patient's father be closed based on a consent degree signed by Plaintiff, even though a consent decree never existed. (*Id*.)

Ultimately, on October 26, 1992, the Board suspended Plaintiff's license, but stayed the suspension, instead putting him on probation. (*Id*. at ¶ 42.) But, after Plaintiff appealed the Board's determination to the Pennsylvania Commonwealth Court, the Board reversed course and immediately suspended Plaintiff's license. (*Id*. at ¶¶ 43-44.) The Commonwealth Court denied the appeal on the basis that the issues raised by Plaintiff were not properly preserved for appeal. (*Id*. at ¶ 45.)

Plaintiff, in October 1994, then unsuccessfully commenced a 42 U.S.C. § 1983 action in this Court. (*Id*. at ¶ 47.) Plaintiff has since filed four unsuccessful actions in this Court based on the aforementioned allegations. (*Id*. at ¶ 48.) The most recent action was dismissed on January 7, 2009. (*Id*. at ¶ 49.)

From 2007 through 2010, Plaintiff sought relief by contacting the Office of the Governor of Pennsylvania and the Office of the Attorney General of Pennsylvania. (*Id*. at ¶ 50.) Each time Plaintiff sought redress, however, his pleas were ignored, and these Offices refused to conduct an investigation of the matter beyond the initial meetings. (*Id*. at ¶¶ 51-53.) Accordingly, the effect of the violations of his constitutional rights remains ongoing. (*Id*. at ¶¶ 54-55.)

Based on these events, Plaintiff commenced this action on March 23, 2012, naming as Defendants the Board, John Kelly, and Frank Monaco. (*Id*. at ¶¶ 10-12.) Plaintiff asserts claims for violation of procedural due process (Count I), deprivation of substantive due process (Count II), and denial of freedom of speech (Count III). Count IV is asserted against Defendant Kelly, and Count V is asserted against Defendant Monaco. Defendants moved to dismiss the claims as untimely on August 27, 2012. (Doc. 8.) The motion to dismiss has now been fully briefed and is ripe for disposition.

## II. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, - - - F.3d - - - , 2012 WL 4335958, at *8 (3d Cir. Sept. 24, 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1)

identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B. Plaintiff's Section 1983 Claims**

Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen ... or any other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused the complained of injury." *Elmore v. Cleary*, 299 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)). "Claims under 42 U.S.C. § 1983 are governed by the state's statute of limitations for personal injury claims." *Mills v. City of Phila.*, 479 F. App'x 414, 415 (3d Cir. 2012) (citing *Pratt v. Thornburgh*, 807 F.2d 355 (3d Cir. 1986)). Thus, the statute of limitations applicable to Plaintiff's § 1983 claims in this case is two years. *See id*. (citing 42 Pa. Cons. Stat. § 5524).

Defendants have moved to dismiss the Complaint on the basis that all facts alleged against the named Defendants occurred outside of the limitations period, and, also, that Plaintiff failed to plead a continuing violation to invoke an equitable exception to the timely filing requirement.

Generally, under the Federal Rules of Civil Procedure, affirmative defenses, such as a statute of limitations defense, should be raised by way of answer to the complaint. *See* Fed. R. Civ. P. 8(c); *see also Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002) ("a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion"). But, the law of this Circuit, under the so-called "Third Circuit Rule," "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only 'if the time alleged in the statement of a claim shows that the cause of action has not been

brought within the statute of limitations.'" *Id*. (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). The bar, however, must be apparent on the face of the complaint, otherwise the "Third Circuit Rule" may not afford the basis for dismissal of a complaint under Rule 12(b)(6). *See id*. (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Because the face of the Complaint demonstrates that Plaintiff's claims against the three named Defendants are barred by the statute of limitations, the Complaint will be dismissed pursuant to the "Third Circuit Rule." Here, the untimeliness of the allegations is clear, as the last act allegedly taken by the Board was in 1992 when it immediately suspended Plaintiff's license after he appealed to the Pennsylvania Commonwealth Court. (*Compl.*, ¶¶ 42-44.) Similarly, Plaintiff has only alleged that Mr. Kelly prosecuted the Board's case against him in the 1990s. (*Id*. at ¶ 97.) Lastly, with respect to the claims against Mr. Monaco, it is alleged that he failed to properly forward an investigative report over twenty-five years ago. (*Id*. at ¶¶ 105-110.) Based on these allegations, it is apparent from the face of the Complaint that the allegations against Defendants all occurred beyond the applicable limitations period.

Plaintiff can also not avoid dismissal of his claims by arguing that the statute of limitations runs from the last overt act of the alleged conspiracy. The Third Circuit, in *Jones v. Middletown Twp.*, 253 F. App'x 184, 187 (3d Cir. 2007), addressed a similar claim from the plaintiffs arguing "that their action is primarily one for conspiracy, and thus it is not barred because the statute of limitations does not begin to run until commission of the last overt act, . . ." In rejecting this argument, the court noted that "[t]he statute of limitations begins to run at the time the claim accrues; time-barred claims cannot be resurrected by being aggregated and labeled 'continuing violations.'" *Id*. (citing *O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir. 2006)). As previously stated, the claims against the Board, Mr.

Kelly, and Mr. Monaco accrued prior to two years before the instant litigation was commenced. Thus, the fact that a conspiracy is alleged does not render the claims timely.

Lastly, Plaintiff has failed to plead a continuing violation by Defendants. The continuing violations doctrine is an equitable exception to the timely filing requirement. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). As such, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.'" *Id*. (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). The defendant's conduct must be more than an isolated or sporadic occurrence, and three factors are relevant to determining whether the continuing violations doctrine is satisfied: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Id*. Notably, though, "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation." *Mumma v. High-Spec, Inc.*, 400 F. App'x 629, 632 (3d Cir. 2010) (quoting *Weis-Buy Serv., Inc. v. Paglia*, 411 F.3d 415, 422-23 (3d Cir. 2005)); *Cowell*, 263 F.3d at 293.

Here, Plaintiff has not alleged any continual unlawful acts by Defendants. Instead, he claims that he has continued to suffer adverse effects from the alleged deprivations of his constitutional rights by Defendants in the 1990s. In addition, the allegations with respect to Defendants relate to isolated incidents in the 1990s that are unconnected with any

allegations that occurred within the limitations in period. Indeed, from the face of the Complaint, the only nonconclusory allegation[2] that arguably occurred within the limitations period is averment 50 of the Complaint: "Plaintiff sought relief through the period from 2007 through 2010 by contacting the Office of the Governor of Pennsylvania, then occupied by Edward Rendell, Esq., and the Office of the Attorney General of Pennsylvania, then occupied by Thomas Corbett, Esq., now himself Governor of Pennsylvania." (*Compl.*, ¶ 55.) Plaintiff, however, fails to connect his claims against Defendants with the actions of these unidentified subordinates in the Office of the Governor or the Attorney General's Office. These allegations, therefore, are insufficient to invoke the continuing violations doctrine to save Plaintiff's time-barred claims from dismissal. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.[3]

## III. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be granted. An appropriate order follows.

November 20, 2012
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

---

[2] Plaintiff's allegations that the "harassment continues to the present," (*Compl.*, ¶ 4), and that the conspiracy is "ongoing," (*Id*. at ¶¶ 71, 82, 95), are "naked assertions" insufficient to support a claim under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937; *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955.

[3] I am also not persuaded by Plaintiff's argument that the untimeliness of his claims should be ignored because he has not "slept on his rights." Statutes of limitations do not exist solely to bar claims of plaintiffs that have unreasonably delayed in claiming violations of their rights. Rather, "statutes of limitations are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience." *Kingston Coal Co. v. Felton Min. Co.*, 690 A.2d 284, 288 (Pa. Super. 1997). These purposes weigh against allowing Plaintiff to proceed in this case.